FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

2017 MAR 16  AM 9: 06

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

**MELISSA CUBRIA,**
                            **Plaintiff,**

**-vs-**                                                    **Case No.  A-16-CA-544-SS**

**UBER TECHNOLOGIES, INC.,**
                            **Defendant.**

_____

## O R D E R

BE IT REMEMBERED on the 13th day of January 2017, the Court held a hearing in the above-styled cause, and the parties appeared in person or through counsel. Before the Court are Defendant Uber Technologies, Inc. (Uber)'s Motion to Compel Arbitration and Dismiss or, in the Alternative, to Stay the Case [#20], Plaintiff Melissa Cubria (Plaintiff)'s Response [#35] in opposition, Uber's Reply [#37] in support, Plaintiff's Supplemental Memorandum [#39] in opposition, and Uber's Response [#40] in support. Having reviewed the documents, the arguments of counsel, the governing law, and the file as a whole, the Court now enters the following opinion and orders granting the motion.

### Background

Uber, a company incorporated in Delaware and headquartered in California, operates an online service that connects riders seeking transportation with available drivers. Mot. Compel [#20] at 3. Uber's customers request rides and pay for the requested rides through the use of Uber's smartphone application (the App). *Id*. Plaintiff, a law school graduate, is an Uber rider who resides in Austin, Texas. Compl. [#1] ¶ 2.

## I.    Account Creation Process

To use Uber, riders must first create an account. Mot. Compel [#20] at 3. Plaintiff created her account through her cell phone using the App on October 13, 2013. *Id.* at 4. At the time Plaintiff created her account, the process involved three steps. *Id.* The first step prompted Plaintiff to submit her email address, cell phone number, and chosen password. *Id.* After all the entry fields were completed, the "Next" button became illuminated and Plaintiff clicked that button to move to the next step. *Id.* For the second step, on a screen entitled "Create a Profile," Plaintiff entered her first and last name. *Id.* Plaintiff again clicked the illuminated "next" button to proceed to the final step. *Id.*

The final step featured a screen prompting Plaintiff to enter her credit card information to pay for ride requests. *Id.* Below the entry field for the credit card information were the words "By creating an Uber account, you agree to the Terms of Service & Privacy Policy." *Id.* The words "Terms of Service & Privacy Policy" featured bold text inside a box outline. *Id.* The box was a clickable button, which if clicked, would take the user to a page with two hyperlinks, one for Uber's "Terms & Conditions" and another for its "Privacy Policy." *Id.* at 5. There was no "Ok" or "I accept" button. Resp. [#35] at 3. Once Plaintiff entered her credit card information, the "DONE" button became enabled and was clicked to create the account. Mot. Compel [#20] at 5. Subsequently, Plaintiff used Uber's services over 300 times. *Id.* at 6.

## II.    Terms and Conditions

The Terms and Conditions (TACs) in effect when Plaintiff signed up for Uber (2013 TACs) specify that they "constitute a legal agreement between [Plaintiff] and Uber . . . ." and by "using or receiving any service supplied to [Plaintiff] by [Uber] . . . [Plaintiff] hereby expressly acknowledge[s]

-2-

and agree[s] to be bound by the terms and conditions of the Agreement, and any future amendments

and additions to this Agreement as published from time to time" on Uber's website or through the

App. Mot. Compel [#20-11] (2013 TACs) at 1.

It is undisputed that Uber issued new TACs on January 2, 2016 (2016 TACs). Mot. Comp.

[#20] at 8 n.4; Resp. [#35] at 3.[1] Section 6 of the 2016 TACs, entitled "Dispute Resolution" contains

a subsection called "Arbitration," which states in relevant part:

> You agree that any dispute, claim or controversy arising out of or relating to these
> Terms or the breach, termination, enforcement, interpretation or validity thereof or
> the use of the Services (collectively, "*Disputes*") will be settled by binding arbitration
> between you and Uber, except that each party retains the right to bring an individual
> action in small claims court and the right to seek injunctive or other equitable relief
> in a court of competent jurisdiction to prevent the actual or threatened infringement,
> misappropriation or violation of a party's copyrights, trademarks, trade secrets,
> patents or other intellectual property rights. You acknowledge and agree that you and
> Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class
> in any purported class action or representative proceeding.

Mot. Compel [#20-13] (2016 TACs) at 10. The 2016 TACs incorporate the American Arbitration

Association (AAA) Rules, stating, "The arbitration will be administered by the [AAA] in accordance

with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related

Disputes (the "*AAA Rules*") then in effect . . . ." *Id.* at 11.

Additionally, in a separate section, the 2016 TACs contain a choice-of-law provision, which

provides, "These Terms are governed by and construed in accordance with the laws of the State of

California, U.S.A., without giving affect to any conflict of law principles, except as may be otherwise

---

[1] Although Plaintiff does not concede any TACs apply to this case, Plaintiff claims the 2016 TACs would apply, rather than the 2013 TACs, because the 2016 TACs were in effect when the events underlying this lawsuit occurred. Resp. [#35] at 3. In contrast, Uber claims the relevant portions of the 2013 TACs and the 2016 TACs, including the arbitration provision, "were nearly identical" and "the result of the analysis here would be the same under either version." Mot. Compel [#20] at 8 n.4. Therefore, the Court analyzes Uber's motion to compel arbitration using the 2016 TACs.

provided in supplemental terms applicable to your region." *Id.* at 12. Neither party claims supplemental terms apply.

### III.   Plaintiff's Claims

Plaintiff filed this putative class action on May 4, 2016, alleging Uber violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), by robo-texting Uber riders in Austin without the riders' express consent. Compl. [#1] ¶ 6. TCPA prohibits "mak[ing] any call (other than a call for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . ." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 F.C.C.R. 14014, 14115 (July 3, 2003). Plaintiff claims she received robo-text messages as part of a political campaign by Uber to oppose a City of Austin ordinance requiring background checks for Uber drivers. Compl. [#1] ¶ 1. Plaintiff purports to represent herself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶¶ 34–42.

Uber moved to compel arbitration, and on January 13, 2017, the Court held a hearing to evaluate all pending motions in this case.[2] The motion to compel is now ripe for review.

---

[2] Plaintiff filed a motion to stay all proceedings, discovery, and deadlines pending action by the Judicial Panel on Multidistrict Litigation (JPML) on whether to consolidate this action with ten others against Uber. Mot. Stay [#11]. Because the JPML issued an order denying consolidation, the Court DISMISSES the Motion to Stay [#11] AS MOOT.

## Analysis

Uber argues the question of arbitrability—if the parties must be compelled to arbitrate their claims—is for the arbitrator to decide under the 2016 TACs. Mot. Compel [#20] at 15–16. Plaintiff responds she never agreed to arbitration, the arbitration agreement does not include a clear and unmistakable delegation of arbitrability to the arbitrator rather than the court, this suit's dispute is outside the scope of the arbitration clause, and the arbitration clause is unconscionable. Resp. [#35] at 1.

For the reasons set forth below, the Court agrees the question of arbitrability is for the arbitrator. The Court finds Plaintiff agreed to the arbitration clause and that clause evinces a clear and unmistakable intent to delegate arbitrability to an arbitrator. Because the delegation provision is severable from the remainder of the arbitration clause, the issues of whether the parties' dispute falls within the scope of the arbitration clause or whether the arbitration clause is unconscionable are reserved for the arbitrator. As both parties' contentions regarding the scope of the arbitration clause and unconscionability are plausible, the assertion of arbitrability is not wholly groundless. Thus, the Court grants the motion to compel arbitration and stays the case.

## I.      Legal Standard

Section 2 of the Federal Arbitration Act (FAA) states, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).

Generally, the court determines whether a party must be compelled to arbitrate her claim. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) ("Ordinarily, whether a claim is subject to arbitration is a question for a court."). In considering a motion to compel arbitration, courts typically engage in a two-step analysis: (1) whether the parties agreed to arbitrate the dispute and (2) whether any federal statute or policy renders the claims nonarbitrable. *Id. Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008). With regard to the first step, courts divide it into two separate considerations: (a) whether a valid agreement to arbitrate *some* claims exists and (b) whether the dispute at hand falls within the terms of that valid agreement. *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009)

Parties, however, "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether . . . their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. Such an agreement is commonly referred to as a "delegation provision." *Id.* at 68.

## II.    Application

### A.    Choice of Law

Plaintiff claims she never agreed to the 2013 TACs and therefore cannot be deemed to have accepted the 2016 TACs or arbitration agreement the latter terms include. As it is a "fundamental principle that arbitration is a matter of contract which cannot be forced upon a party absent its consent[,]" the Court must decide at the outset whether an agreement was reached, applying state law principles of contract. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). Thus, as a preliminary matter, the Court considers what law governs whether an agreement was reached. *Crawford*, 748 F.3d at 257.

-6-

In determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. *Wash. Mut. Fin. Grp.,* 364 F.3d at 264.

Here, the 2016 TACs include a choice-of-law provision, which states the 2016 TACs are "governed by and construed in accordance with the laws of the State of California, U.S.A., without giving affect to an conflict of law principles, except as may be otherwise provided in supplemental terms applicable to your region." 2016 TACs at 12. Comparatively, the 2013 TACs did not include a choice-of-law provision. *See* 2013 TACs.

In light of the 2016 TACs, Plaintiff argues California law should apply. Resp. [#35] at 4. Uber, on the other hand, claims Texas law should apply because there was no choice-of-law provision under the 2013 TACs and Plaintiff is a Texas resident. Reply [#37] at 6 n.7. Uber concedes, however, the analysis under either state's law would be the same "because California contract law is substantially the same as Texas contract law." Mot. Compel [#20] at 12.

Thus, applying the choice-of-law provision from the 2016 TACs, the Court finds California law governs. As Uber concedes the Court's analysis would be the same under either version of the TACs and under either Texas or California law, the Court sees no reason not to follow the choice-of-law provision. *Id.* at 8 n.4, 12.

## B.     The Parties Agreed to Arbitrate

Like the Fifth Circuit, California courts recognize "[a]s a general matter, one cannot be required to submit a dispute to arbitration unless one has agreed to do so." *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 219 (2009); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit

to arbitration any dispute which he has not agreed so to submit."). Thus, the Court now turns to whether Plaintiff agreed to arbitrate.

Under California law, a contract requires manifestation of mutual assent, whether by written or spoken word or by conduct. *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.,* 25 Cal. App. 3d 987 (1972)). Such a manifestation is judged objectively, via an outward manifestation or expression of assent. *Windsor Mills,* 25 Cal. App. 3d at 992.

Furthermore, a party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. *Norcia v. Samsung Telecommunications Am., LLC,* 845 F.3d 1279, 1284 (9th Cir. 2017) (reciting basic principles of California contract law). Generally, a party cannot avoid the terms of a contract on the ground she failed to read it before signing it. *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89 Cal. App. 4th 1042, 1050–51 (2001). However, when the writing does not appear to be a contract and the terms are not called to the attention of the recipient, then no contract is formed with respect to the undisclosed term. *Id.* The inquiry, then, focuses on whether the party was provided notice and an opportunity to review the terms of service prior to acceptance sufficient to put her on notice of the terms to which she was assenting. *Swift,* 805 F. Supp. 2d at 911.

An actual negotiation regarding every term has never been required for the formation of a contract. *Marin Storage,* 89 Cal. App. 4th at 1050–51. Because the existence of mutual assent is determined by objective criteria, the test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement. *Id.* While silence is generally not acceptance of an offer, an offeree's silence may be treated as consent when the party retains the benefit offered. *Norcia,* 845 F.3d at 1285.

-8-

The process through which Plaintiff established her account with Uber put her on reasonable notice that the act of signing up for Uber's services bound her to the 2013 TACs. *See id.* at 1287 ("Where a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude, consistent with California contract law, that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice."). The placement of the phrase "By creating an Uber account, you agree to the Terms of Service & Privacy Policy" on the final screen of the account registration process was prominent enough to put a reasonable user on notice of the terms of the Agreement. *See Cullinane v. Uber Techs., Inc.,* No. 14-14750-DPW, 2016 WL 3751652, at *7 (D. Mass July 29, 2016) (examining a visually identical sign-up flow and finding the plaintiff and Uber entered into a valid agreement to arbitrate their disputes). Ultimately, Plaintiff had inquiry notice of the terms under the 2013 TACs. *Id.*

Plaintiff does not contend the Uber sign-up process did not appear to be a contract. Plaintiff clicked "DONE" after entering her credit card information and passing over the "Terms of Service & Privacy Policy" clickable button. Although "DONE" is less precise than "I agree" or "I accept," the warning "By creating an Uber account, you agree to the Terms of Service & Privacy" is unambiguous in alerting the user that creating the account will bind her to the 2013 TACs. Consequently, Plaintiff's argument she did not have reasonable notice of or manifest assent to the 2013 TACs is unpersuasive, especially because Plaintiff accessed Uber's services over 300 times after clicking "DONE." Mot. Compel [#20] at 6. She therefore retained the benefit offered by the contract not once but 300 times, implying she consented.

Thus, under these circumstances, the Court concludes Plaintiff agreed to the 2013 TACs. And because under California law a party who is bound by a contract is bound by all its terms, the Court

also finds Plaintiff agreed to be bound by future amendments, including the 2016 TACs and the arbitration clause included within.

## C.    The Parties Agreed to Delegate Arbitrability

Delegating the issue of arbitrability gives the arbitrator, rather than the court, the authority to decide if the parties must be compelled to arbitrate their claims. *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 407–08 (5th Cir. 2014). An arbitrator shall decided issues of arbitrability when (1) the parties clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator and (2) the assertion of arbitrability is not wholly groundless. *Douglas v. Regions Bank*, 757 F.3d 460, 462–64 (5th Cir. 2014).

A delegation provision "need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." *Hous. Ref., L.P.*, 765 F.3d at 410 n.28. The Fifth Circuit has held "express incorporation of the [AAA Rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."[3] *Crawford*, 748 F.3d. at 262–63 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Edwards v. Doordash, Inc.*, No. CV H-16-2255, 2016 WL 7852532, at *13 (S.D. Tex. Dec. 8, 2016).

Here, there is clear and unmistakable intent to delegate the question of arbitrability. The 2016 TACs expressly state the parties "agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "*Disputes*") will be settled by binding arbitration . . . ." 2016

---

[3] Rule 7(a) of the AAA Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope of validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

TACs at 10. Subsequently, the 2016 TACs incorporate the American Arbitration Association (AAA) Rules by stating, "The arbitration will be administered by the [AAA] in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "*AAA Rules*") . . . ." *Id.* at 11. This language is clear and unmistakable evidence Plaintiff and Uber intended to delegate the power to decide arbitrability to an arbitrator. *See Crawford*, 748 F.3d at 263.

Plaintiff claims a different standard applies when deciding if the parties intended to send the question of arbitrability to an arbitrator where one of the parties is an unsophisticated consumer.[4] Resp. [#35] at 4–7. Under such circumstances, according to Plaintiff, the incorporation of the AAA rules should not be enough to delegate arbitrability. *Id.* Yet, Plaintiff's argument ignores the fact that courts in the Fifth Circuit have concluded incorporation of the AAA rules demonstrates intent to delegate arbitrability even in cases involving unsophisticated plaintiffs. *See, e.g., Alvarado v. Conn Appliances, Inc.*, No. 1:16-CV-464-LY, 2016 WL 6834020, at *2 (W.D. Tex. Nov. 17, 2016) (noting the incorporation of the AAA rules merited finding intent to arbitrate arbitrability where consumer brought TCPA claim); *Griggs v. Sge Mgmt., LLC*, No. A-15-CV-422-LY-ML, 2015 WL 11423656, at *4 (W.D. Tex. Oct. 15, 2015), *report and recommendation adopted*, No. 1:15-CV-422-LY, 2015 WL 11438110 (W.D. Tex. Nov. 4, 2015) (finding incorporation of the AAA rules in an agreement between employee and employer demonstrated intent to leave question of arbitrability to an arbitrator). As a result, the incorporation of the AAA Rules constitutes clear and unmistakable evidence the parties agreed to arbitrate arbitrability, regardless of the sophistication of the parties.

---

[4] Uber argues Plaintiff is not an unsophisticated consumer because she graduated from law school. Reply [#37] at 1. The Court need not decide this issue and assumes, for the sake of argument, Plaintiff is an unsophisticated consumer.

Plaintiff also argues arbitration should not be compelled because the dispute is not covered by the arbitration clause and the arbitration clause is unconscionable. Yet, the Court need not examine either of these arguments because the delegation provision is severable from the rest of the arbitration agreement and the contract as a whole. *Aviles v. Russell Stover Candies, Inc.,* 559 F. App'x 413, 414–15 (5th Cir. 2014) (citing *Rent-A-Center,* 561 U.S. at 68–72). For a court to consider a party's argument against arbitration when a delegation provision is present, the party must challenge the delegation provision itself specifically. *Id.* ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate [contained within the challenged contract]."). Where a delegation provision applies, challenges to the agreement to arbitrate or to the contract as a whole must be submitted in the first instance to the arbitrator. *See id.* at 415 (holding the magistrate judge should have declined to examine whether the agreement to arbitrate was illusory and whether the dispute fell within the scope of the arbitration clause as plaintiff did not challenge the delegation provision specifically).

Thus, because the 2016 TACs incorporated the AAA rules, the Court concludes the parties clearly and unmistakably agreed to arbitrate arbitrability, including whether the parties' dispute is within the arbitration clause's scope and whether the arbitration clause is unconscionable.

**D.     Argument for Arbitration is Not Wholly Groundless**

Courts in the Fifth Circuit enforce a clear and unmistakable delegation provision unless the argument for arbitration is wholly groundless. *Kubala v. Supreme Prod. Servs., Inc.,* 830 F.3d 199, 202 n.1 (5th Cir. 2016) (citing *Douglas,* 757 F.3d at 464). Consequently, "[s]o long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective . . . ." *Id.; see also W.L. Doggett LLC v. Paychex, Inc.,* 92 F. Supp. 3d 593, 599 (S.D. Tex. 2015) ("Assertion of arbitrability is not wholly groundless if, on the one hand,

there is a plausible and legitimate argument that the arbitration agreement covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not."). In other words, it is not the court's job to "*resolve* the parties' arbitrability arguments," but rather to determine "whether there is a *bona fide* dispute on arbitrability." *Kubala*, 830 F.3d at 202 n.1.

As noted above, Plaintiff argues arbitration is improper here because the suit's dispute does not fall within the arbitration clause's scope. Plainitff contends her TCPA claim relates to neither Uber's services nor the 2016 TACs. Resp. [#35] at 9–11. In contrast, Uber claims courts broadly construe arbitration clause language to compel arbitration where the alleged TCPA violation is intertwined with the underlying contract. Mot. Compel [#20] at 16–18. After reviewing both parties' arguments, the Court finds there is a *bona fide* dispute on whether claims of this lawsuit fall within the arbitration clause's scope.

Similarly, the Court concludes a *bona fide* dispute exists on whether the arbitration clause is unconscionable. Plaintiff argues arbitration is improper because the arbitration clause is unconscionable, both procedurally and substantively. Specifically, Plaintiff claims the arbitration clause is oppressive, unfairly surprising, and unduly favorable to Uber. Resp. [#35] at 12–20. Uber, on the other hand, argues the arbitration clause is not unconscionable because it was fairly disclosed to Plaintiff via hyperlinks and provides safeguards to ensure riders are treated fairly, including terms enabling riders to arbitrate in their home counties and requiring Uber to pay for arbitration expenses. Reply [#37] at 6–10.

In sum, the Court finds both parties' contentions regarding applicability of the arbitration clause are plausible, and thus the assertion of arbitrability is not wholly groundless.

**Conclusion**

Because Plaintiff agreed to the arbitration clause, the parties clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator, and the assertion of arbitrability is not wholly groundless, the Court GRANTS Defendant's Motion to Compel. This Court will STAY this case pending a decision by the arbitrator. Should the arbitrator determine that the arbitration agreement is not enforceable or the issues raised in this case are not covered by the arbitration agreement, the parties may return to this Court to continue litigation. In the meantime, the parties are instructed to file status reports regarding the arbitration proceedings with this Court every ninety days.

Accordingly,

IT IS ORDERED that Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration and Dismiss or, in the Alternative, to the Stay the Case [#20] is GRANTED;

IT IS FURTHER ORDERED that this case is STAYED pending a decision by the arbitrator; and

IT IS FINALLY ORDERED that the parties shall file status reports regarding the arbitration proceedings with the Court every NINETY (90) DAYS.

SIGNED this the _15th_ day of March 2017.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE